## Case No. 17,349.

### In re WEEKS.

[8 Ben. 265;[1] 13 N. B. R. 263.]

District Court, S. D. New York. Dec., 1875.

BANKRUPTCY — RE-EXAMINATION OF CLAIM — PAYMENT ON NOTE BY MAKER AFTER PROOF OF CLAIM AGAINST ENDORSER—PLEDGE.

A firm at various times obtained money from a bank, on business notes owned by it, which the firm endorsed and delivered to the bank at the various times when the money was obtained, and also on notes made by one member of the firm and endorsed by the other. The firm afterwards going into bankruptcy, the bank proved its claim for the amount of all the notes. A dividend of thirty per cent. became payable by the assignee. It appeared that, after the bank had proved its claim, the sum of $855.61 had been collected of the makers of some of the business notes, but in no case had the amount collected equalled seventy per cent. of the note. *Held*, that such collection was not to be treated as reducing the claim against the bankrupt firm on which the dividend was payable, and that there was no pledge of or lien on personal property of the bankrupts, for the securing of the debt of the bankrupts to the bank, within the meaning of section 5075 of the Revised Statutes of the United States, as respected the notes endorsed by the bankrupts.

[Cited in Re Pulsifer, 14 Fed. 249.]

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[In the matter of George S. Weeks, a bankrupt.]

[2] [I, the undersigned register in charge of the above entitled matter, to whom it was referred by a special order of this court, bearing date April 17, 1875, to inquire on testimony, and report whether the petitioner referred to in said order be entitled to the dividend heretofore declared on the amount proved by said petitioner herein, or, if not, to what amount the said claim should be reduced, do hereby certify and report that I have been attended by counsel for the respective parties, and have taken all the testimony offered by them respectively, all of which is herewith handed up, and have listened to their arguments and examined their briefs, which are also herewith handed up.

[Since the proving of the claim in bankruptcy, the further sum of eight hundred and fifty-five dollars and sixteen cents has been paid upon one or more of the notes by the makers thereof. But upon no one of the notes aforesaid has the maker paid a sum equal to seventy per cent. of its face. The creditor, while admitting that the sum of one hundred and twenty-three dollars and twenty-four cents so paid upon said notes prior to the proving of its claim in bankruptcy should go to reduce its claim against the estate, insists that the sum of eight hundred and fifty-five dollars and sixteen cents, so paid upon the notes subsequently to the proving its claim in bankruptcy, ought not to be applied in reduction thereof as against the estate, but that it is applicable only to the sum which will remain due and owing after the thirty per cent. dividend shall have been received. The result of this would be that the creditor would hold in addition to the dividend of thirty per cent. claimed from the estate, all sums that have been paid since the proof of its claim in bankruptcy, and all sums that shall hereafter be paid by the respective makers, less than seventy per cent. of the aggregate sum so due on said notes, free from any claim by the assignees in bankruptcy, and would be liable to refund to them of moneys so received only such sum as should be paid in excess of such seventy per cent.; or the creditor would, at most, be liable to pay over to the assignees only such sum as should be paid upon any one or more of said notes, in excess of such seventy per cent. thereof.

[It is very clear that the holder of a promissory note may sue the maker and indorser in separate suits, and recover the whole face of the note in each suit, and he may enforce the payment of both judgments. Equity would undoubtedly interfere and prevent a double payment, either by injunction or by declaring a trust in favor of the maker or indorser, or both maker and indorser, as the case might be. That, however, it may be said, presents a question of law upon contract. It is here a question of an equitable distribu-

[2] [From 13 N. B. R. 263.]

tion of a bankrupt's estate among his creditors. But equity never impairs a legal contract. If a man part with his goods or money upon the credit of two men under separate contracts, or a several contract, he ought to be at liberty to enforce those contracts against each debtor severally, and collect what he can from each, not exceeding the sum due. If both of such debtors should go into separate bankruptcy, his right as against each ought not to be thereby impaired. The result of this would be that such creditor could prove his claim against both estates, and receive, if the assets would admit of it, the whole sum due in such proportions from each estate as each might be able to pay. That this would be no wrong against other creditors of such estates is clear by contemplating for a moment a case where one of such bankrupts has no assets whatever, while the other estate was sufficient to pay the entire amount of the claims against it. In short, each bankrupt legally owes the entire debt, and the holder of the note is entitled by law to collect the whole from either.

[There must clearly be some period or point of time at which a partial payment by a maker of a note should cease to be applied in reduction of the amount payable upon such note out of the estate of the bankrupt indorser, and when such payment should go simply to reduce the amount due from the maker. A sum larger than that actually remaining due upon the note could not be proved in bankruptcy, and hence all payments prior to such proof must be applied to reduce the sum upon which a dividend can be demanded. When that proof is once made, it ought, I think, to be conclusive as to the amount due, and not be subject to variation by subsequent payments, unless the result would be to overpay the note. A partial payment by the maker after payment of the dividend would go simply to reduce the amount due from the maker, and could in no sense affect the amount paid from the estate, so long as both payments do not exceed the sum due, or face of the note. The period therefore in question must be either the time of proving the claim, or the time of the actual payment of the dividend. To adopt the latter as the period would subject the proceedings in bankruptcy to inconvenient fluctuation, and, in a case like the present, be a thing almost impracticable. Upon these forty-seven notes payments might have been made daily between the time of the proving of the claim and the time of paying the dividend. In such a case it would require new and successive computations to a degree that would be embarrassing. I do not see that there is any greater injustice in fixing the time at the one period than at the other, and I observe that the time of the proving of the claim is the period that seems to have been adopted in the case of Sohier v. Loring, 60 Mass. 537. See, also, Blake v. Ames, 90 Mass. 318.

[The remaining question here presented is, was the transaction between the bank and the bankrupt firm a sale and purchase of the notes, or was it a loan, indorsing over and receiving the notes as collateral security therefor.

[The law will presume, in the absence of proof to the contrary, that the notes are business paper. Collins v. Martin, 1 Bos. & P. 648, 651; Holliday v. Atkinson, 5 Barn. & C. 501. The testimony casts no doubt upon this presumption save as to the five notes above mentioned, amounting in all to four thousand four hundred and ninety dollars and thirty-nine cents, made and indorsed by the members of the bankrupt firm, which are clearly not held as collateral security. As to all remaining notes I understand counsel to agree that they are business paper. Referring to the concededly business paper, it may be said that they are not merely choses in action, but chattels in possession, subject to the same law as other chattels (McNeilage v. Holloway, 1 Barn. & Ald. 218), and when the transaction is the creation of a subsisting debt, as the loan of money, and chattels are at the same time delivered, the presumption, in the absence of proof to the contrary, is that they are delivered as security or pledge. There is no proof of sale, nor is there any presumption arising out of the delivery accompanying the creation of the claim here proven, that the title to the chattels passes to the bank other than as security or pledge. Again, there can be no doubt that without any demand and notice of non-payment, the bankrupt firm would be liable for all the money they received from the bank as for money had and received, or loaned. The bank parted with the money, not at the request of or to accommodate the makers of the notes or any of them, but at the request and to accommodate the bankrupt firm. The fact that one-third and over of the entire sum had of the bank was upon notes made and indorsed by the members of the bankrupt firm—had as any other loaned money is had, for which the note of the borrower is given—shows at least the character of a part of the transaction, and it would be difficult to distinguish one part of it from another so far as the question under consideration is concerned. That part clearly was a loan of money from the bank to the bankrupt firm. It is not in proof distinctly that the money had by the bankrupt firm was from time to time charged as a loan upon the books of the bank, and the notes in question merely catalogued upon the books as so much security held therefor. But the contrary is not shown, and this is believed to be the usual practice of banks in such cases. This, perhaps only partial presumption, is aided by the language used by the creditor in its formal probate of its claim—the proof of debt. In that instrument the creditor says: "That the consideration of said indebtedness was money loaned to the firm of F. S. Weeks & Co., upon promissory notes indorsed by said F. S. Weeks & Co." Had this loan been upon bills of lading or any other chattel instead of "promissory notes indorsed, etc.," no one would

have doubted that it meant to assert that the bills of lading, or other chattel, were held merely as collateral security for a principal debt.

[It should, however, be remarked that it is inferable from the whole tenor of this paper and the schedules annexed to it, that the creditor does not mean to bottom its claim upon a loan, but rather upon the liability of the bankrupt firm as indorsers. Yet, had the transaction been the purchase of notes, the creditor would not probably have fallen into this use of language.

[Although the petition of the creditor asserts that the notes were discounted by the bank, the proof of claim asserts no such thing, but leaves it (except by inference) where the language above quoted leaves it. But the use of that word would help the case but little. The word discount does not necessarily imply a purchase and sale. It is quite as consistent with a loan upon the security of the notes of a third party as with the sale of them. "The discounting of a note by a bank understood to consist in the lending of money upon it, and deducting the interest or premium in advance." City Bank of Columbus v. Bruce, 17 N. Y. 507, 515. Bouvier says: "Among merchants the term used when a bill of exchange is transferred, is, that the bill is sold, and not that it is discounted. See [Bell v. Cunningham] 3 Pet. [28 U. S.] 80.

[Suppose these notes had been bonds—government or otherwise—would the transaction have been different? The application by the bankrupts for money and the accommodation granted by the bank to the firm would have been from the same motives, for the same purpose, and substantially in the same form. If the bank would have received a payment of interest or principal on the notes, it would also have taken the payment of the coupons upon the bonds, or even payment of the bonds themselves if they had fallen due before the loan was paid.

[Suppose accommodation paper were presented to a bank for discount and it should be discounted by the bank (in ignorance of the fact that it was accommodation paper) at a greater rate of interest than seven per cent., and in an action by the bank upon such paper, the plea of usury were interposed, can it be doubted that such a plea would prevail? yet such a plea could not prevail upon any other hypothesis than that the transaction was a loan.

[Nothing ought to be presumed in favor of a sale from the fact that the bank protested the notes at maturity. It is matter of everyday observation that banks (perhaps in the interest of the notary) protest paper that falls into their possession without much regard to any necessity for doing so.

[I cannot but regard this transaction, as far as all the business paper is concerned, as a loan upon the security of the notes. If so, it would be governed by section 5075 of the Revised Statutes.

[As to the debt represented by the five notes made by one of the bankrupt firm, and indorsed

by the other, amounting to four thousand four hundred and ninety dollars and thirty nine cents, there seems to be no reason for saying that such five notes are held as security, and as to them the creditor should be allowed to receive its dividend. But as to the remainder of the claims, the creditor may surrender the notes to the assignees and receive the dividend. or their value may be fixed as provided in section 5075, and a dividend paid upon the balance.

[Respectfully submitted,
  [I. T. WILLIAMS, Register in Charge.] [2]

BLATCHFORD, District Judge. I concur in the conclusion of the register as to the first question above presented.

As to the second question above presented. I am of opinion that there was not and is not any pledge of, or lien on, any personal property of the bankrupts, for securing the payment of any debt owing to the Metropolitan National Bank from the bankrupts, within the meaning of section 5075 of the Revised Statutes, as respects the notes endorsed by the bankrupts.